William A. **KASTOR**, Plaintiff,

v.

**SAM'S WHOLESALE CLUB**, Defendant.

No. Civ.A. 3:99CV2272L.

United States District Court, N.D. Texas, Dallas Division.

Jan. 18, 2001.

---

Brett Lee Myers, Law Office of Brett Myers, Dallas, TX, for William A. Kastor.

Randolph L Burns, Baker Botts, Dallas, TX, Andy Sarwal, Carlos Quinones, Wal-Mart Stores Inc, Legal Team, Bentonville, AR, Alan N Magenheim, Magenheim Bateman & Helfand, Houston, TX, Juanita C Hernandez, Jenkens & Gilchrist, San Antonio, TX, for Sam's Wholesale Club.

*MEMORANDUM OPINION*
*AND ORDER*

LINDSAY, District Judge.

Before the court is Defendant Sam's Wholesale Club's Motion for Summary Judgment, filed September 29, 2000. After careful consideration of the motion, Plaintiff's response, Defendant's reply, the summary judgment record, and applicable authorities, the court, for the reasons stated herein, **grants** Defendant's Motion for Summary Judgment.

**I. Factual and Procedural Background**

This is an action for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiff William A. Kastor ("Plaintiff" or "Kastor") began working for Defendant Sam's Wholesale Club ("Defendant" or "Sam's") in 1992, after the company purchased Pace Warehouse, Plaintiff's former employer. Sam's is a discount retail establishment. In 1993, Kastor was selected to manage the bakery department of the Sam's Wholesale Club in Addison, Texas. Kastor worked generally from 7:00 a.m. to 5:00 p.m., five days a week,[1] and was paid a salary of approximately $560 per week. Kastor reported to one of three assistant store managers, who in turn reported to the general manager of the store.

In addition to Kastor, the bakery department consisted of a team leader and five to eight employees. Kastor was the only salaried employee in the bakery department. As manager, Kastor was responsible for tracking the department's daily, weekly and monthly sales, tracking the gross margin of all products sold·in the bakery department; using tools of the trade to increase sales through presentation; identifying sales opportunities and plans to increase sales; maintaining appro-

---

**1.** At times Kastor may have worked different hour shifts, but he never worked more than five days per week.

priate inventory levels for the department's sales, which consisted of ordering products and supplies for the bakery; and maintaining quality assurance, that is, ensuring that product and sanitation standards were maintained within the area. Kastor also supervised the employees in the bakery department. He directed the work of bakery employees and was responsible for making out their work schedules, conducted annual employee performance evaluations, interviewed and trained new employees, addressed employee grievances, and disciplined employees in his department, including giving verbal and written reprimands, although recommendations to terminate an employee were referred to the general manager. Kastor attended store meetings, along with other area managers, assistant managers, the general manager, and hourly-paid employees, including team leaders.

On October 5, 1999, Kastor filed this lawsuit against Sam's alleging that it required him to work more than 40 hours per week without overtime compensation in willful violation of the FLSA. Defendant now moves for summary judgment, contending that, as a former manager of the bakery department, Plaintiff was an executive and administrative employee and, therefore, exempt from receiving overtime compensation pursuant to 29 U.S.C. § 213(a)(1).

## II. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a ver-

dict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas*, 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*, *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails

to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. Analysis

■ The FLSA requires an employer to pay overtime compensation to any employee who works more than forty hours in a regular workweek. 29 U.S.C. § 207(a). This overtime pay requirement, however, does not apply to employees working in "a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Sam's contends that Kastor was exempt from the overtime wage provisions of the FLSA as an executive or administrative employee. As the employer, Sam's has the burden of establishing that Kastor falls within one of these exemptions, all of which are to be narrowly construed against it. *See Dalheim v. KDFW–TV,* 918 F.2d 1220, 1224 (5th Cir.1990).

The Department of Labor has set forth two different tests, a "long test" and a "short test," for determining whether an employee falls within the specified exemptions.[2] The parties agree that Kastor earned more than $250 per week while employed by Sam's; therefore, the Department of Labor's "short test" applies. The "short test" for the executive exemption requires Sam's to prove 1) that Kastor was compensated on a salary basis of not less than $250 per week, 2) that Kastor was primarily responsible for the management of a customarily recognized department or subdivision thereof, and 3) that Kastor customarily and regularly directed the work of two or more other employees. 29 C.F.R. § 541.1(f); *Lott v. Howard Wilson Chrysler–Plymouth, Inc.,* 203 F.3d 326, 332 (5th Cir.2000).

As stated before, there is no dispute that Kastor was a salaried employee earning more than $250 per week. Therefore, the first prong of the "short test" has been satisfied. The court now turns to the second part of the test: whether Kastor was primarily responsible for the management of a customarily recognized department or subdivision thereof.

As there is no dispute that Sam's Bakery Department is a customarily recognized department of Sam's Wholesale Club, the issue the court must decide with respect to this prong is whether Kastor's primary duty was management of that department. Defendant contends that Kastor's primary duty involved managing Sam's Bakery Department, and that he was required to perform several managerial tasks. Kastor contends that ninety percent of his time was spent in performing the exact same work as hourly employees, such as actual preparation, baking, packaging baked products, stocking baked items for sale, refilling inventory on the selling floor, getting supplies from the freezer and storage areas, sweeping and cleaning the production areas of the bakery department, and taking and preparing food orders from customers. *See* App. to Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., Tab 1 (Declaration of William A. Kastor, ¶ 6). The remaining ten percent, Kastor says, was spent performing managerial tasks. *Id.,* ¶¶ 7–15. Kastor therefore argues that he does not meet the primary duty requirement for an executive employee because only a small portion of his time was devoted to management of the bakery. The court disagrees.

■ As a general rule, an employee's "primary duty" will typically involve over 50 percent of the employee's work time, *see Lott,* 203 F.3d at 331; however, time alone is not the sole test. 29 C.F.R. § 541.103; *see also Smith v. City of Jack-*

---

**2.** The Labor Department's "long test" applies to employees earning more than $155 per week but less than $250 per week, and the "short test" applies to employees earning more than $250 per week. *See* 29 C.F.R. §§ 541.1, 541.2, 541.119; *Lott v. Howard Wilson Chrysler–Plymouth, Inc.,* 203 F.3d 326, 331 (5th Cir.2000).

*son,* 954 F.2d 296, 299 (5th Cir.1992); *Dalheim,* 918 F.2d at 1227. The Fifth Circuit has determined that an employee's "primary duty" cannot be ascertained by applying a simple "clock" standard that contrasts the amount of time each day an employee spends on exempt and nonexempt work. *Dalheim,* 918 F.2d at 1227. In cases where an employee spends less than 50 percent of his time in managerial duties, management may nevertheless be his primary duty if other pertinent factors support such a conclusion. *Id.;* 29 C.F.R. § 541.103. Therefore, flexibility is appropriate when applying this rule, and the court may consider other factors such as the relative importance of the managerial duties as compared with other duties; the frequency with which the employee exercises discretionary powers; the employee's relative freedom from supervision; and comparative wages, that is, the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103; *see also Lott,* 203 F.3d at 331; *Smith,* 954 F.2d at 299; *Dalheim,* 918 F.2d at 1227 & n. 33. Under the "short test," the employee's primary duty will usually be what he does that is of principal value to the employer, not the collateral tasks that he may also perform, even if they consume more than half his time. *Dalheim,* 918 F.2d at 1227. Based on the competent summary judgment evidence, the court concludes that Kastor's principal value to the company was manager of Sam's Bakery Department. Indeed, there is no dispute that Sam's specifically selected Plaintiff in 1993 to *manage* the bakery department.

As bakery manager, Kastor was responsible for, *inter alia,* managing the department, supervising the department's employees; using tools of the trade to keep track of sales, to increase sales, productivity and efficiency, to track the gross margin of all products sold, and to project sales of the department's products; developing production schedules to maximize sales; maintaining the department's inventory; maintaining expense controls; maintaining quality assurance by ensuring that the department met specified standards; addressing shrinkage and sanitation issues; interviewing prospective new employees; participating in the hiring and firing of employees; training and developing employees; directing the work of employees; scheduling employees to ensure appropriate coverage and production; handling disciplinary actions involving employees; conducting performance evaluations of employees; and enforcing Sam's policies and procedures with respect to the bakery department. *See* Def. Mot. for Summ. J, Exhibit A (Oral Deposition of William Kastor, pp. 45, 46, 53, 55, 57, 58, 59, 60, 64–67, 75–78, 84–97, 99, 100); App. to Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., Tab 1 (Declaration of William A. Kastor, ¶¶ 7–15). Kastor also received periodic performance reviews (one of which was conducted in 1998 by Craig Ryan, Sam's general manager), in which he was specifically evaluated on these managerial tasks. Def. Mot. for Summ. J, Exhibit A (Oral Deposition of William Kastor, p. 168 (Exhibit 8)); App. to Def.'s Br. in Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J, Exhibit D (Sam's Club Performance Appraisal for Fresh Manager [3]). In addition, Kastor wrote two Action Plans addressing ways in which he could improve his performance as manager of the bakery department, as well as operation of the department. *See* Def. Mot. for Summ. J, Exhibit A (Oral Deposition of William Kastor, pp. 175–176 (Exhibits 9 and 10)).

The court is unpersuaded by Kastor's attempt to minimize his responsibilities by arguing that he spent 10 percent of his time performing managerial tasks, and less than 1 percent of his time performing each of the listed tasks. Although Kastor contends that he spent 90 percent of his

---

**3.** Fresh managers are managers of either the bakery department or meat department.

Def.'s Mot. for Summ. J., Exhibit A (Oral Deposition of William Kastor at 20).

time performing non-managerial tasks, that was not the purpose of his employment. Kastor was hired by Sam's to manage the bakery department. Indeed, Kastor's performance evaluations indicate that as bakery manager he was only required to assist with production on an "as necessary" basis. Moreover, as stated in one of his Action Plans, it was Kastor's desire to "be more available on the work floor, taking a more proactive role in production, packaging and keeping the sales floor full. By doing so, I will demonstrate a sense of urgency, teaching by example[;] therefore the other partners [bakery employees] will follow suit." Def.'s Mot. for Summ. J., Exhibit A (Oral Deposition of William Kastor at 176 (Exhibit 10)). That Kastor spent the majority of his time performing non-managerial tasks in no way establishes that management was not his primary duty. As bakery manager, he was assigned specific managerial tasks in accordance with Sam's policies and procedures, and was the person on whom Sam's relied to enforce its policies. Given the nature of his responsibilities, the character of his managerial tasks, and the importance of his position to the company, the court concludes that Kastor's primary duty was management of the bakery department.

Plaintiff contends that notwithstanding the time he spent performing non-managerial duties, other factors demonstrate that management was not his primary duty. First, Plaintiff contends that many of his responsibilities were performed by simply filling out standardized company forms, without exercising independent judgment or discretion, and that hourly employees could and often did perform these tasks when he was not available. The court accepts as true that hourly employees performed these tasks when Kastor was unavailable; however, this is true in virtually every situation where a person in a managerial position is absent temporarily or temporarily unable to perform his duties. That Plaintiff's duties were at times temporarily performed by hourly employees does not alone change the character of his (Plaintiff's) primary responsibilities.

Plaintiff also contends that he did not have independent authority to act with respect to several managerial tasks. For example, Kastor contends that he could not schedule employees to work more than 37.5 hours per week without first receiving supervisor approval; that he could not independently hire or fire employees; that in maintaining the department's inventory, he simply ordered items in predetermined quantities according to the store's specifications; that he did not have the authority to increase an employee's rate of pay; that he performed employee evaluations based on the company's defined standards and policies; and that he did not have independent authority to purchase equipment for the bakery or to rearrange the bakery department. Plaintiff seems to be arguing that because he did not have final decision-making or supervisory authority in the operation of the bakery department, he does not qualify for the executive exemption. The court finds this argument unavailing.

With respect to the administrative exemption, which requires as part of its test that an employer demonstrate that an employee's primary duty included work requiring the exercise of discretion and independent judgment, the Fifth Circuit has held that final decision-making authority is not required. *See Lott,* 203 F.3d at 331. The court knows of no reason why this same proposition of law would not apply equally to the executive exemption and holds that it does under the facts of this case. If final decision-making authority were the test for determining whether a person was an executive or administrative employee, one would rarely, if ever, qualify as such an employee under the regulations. A president or chief executive officer of a company could say that he does not have final decision-making authority because he is only authorized to carry out the policies set by the board of

directors, and the board of directors is free to review and veto his decisions. Typically, there is a hierarchy or line of supervision in any corporate entity or business wherein managers and supervisors have persons to whom they must report, and that an individual does not have final supervisory or discretionary authority does not take that person out of the realm of being a manager or supervisor in the company or business. That Kastor had to obtain approval from his immediate supervisor from time to time on matters pertaining to bakery employees, or obtain capital expense approval from the general manager or regional director before purchasing equipment of significant costs, in no way diminishes his role as supervisor or manager over the bakery department. Further, the summary judgment record reflects that the only time that Kastor had to obtain approval from his superiors was when he wanted to perform an act beyond the scope of the store's policies. Despite Kastor's attempt to characterize the bakery department as essentially running itself, the competent summary judgment evidence establishes that Kastor had to exercise discretion in managing the bakery. Kastor scheduled bakery employees according to the needs of the bakery, and developed work schedules that would ensure appropriate coverage and production within the department. Kastor communicated direction to his employees and, when a special project in the bakery required it, he assigned duties accordingly to maximize productivity and efficiency. Kastor determined when, and if, an employee should be disciplined and recommended what action should be taken; he also addressed employees' concerns and grievances. He determined when to order products, as well as what supplies were to be ordered and their quantity. He also developed action plans to address problem areas within the department. The record further establishes that Kastor operated the bakery on a daily basis without much, if any, interference from his immediate supervisors or the general manager of the store. Therefore, while Plaintiff may have been guided by Sam's policies and procedures in the manner in which he was required to perform his duties, Kastor was ultimately responsible for making decisions concerning the daily operation of the bakery department.

The court also finds unpersuasive Plaintiff's attempt to minimize his management of the employees in his department. One of Kastor's key responsibilities as manager was leadership of the bakery department. Kastor was actively involved in providing daily guidance and direction to his employees, and was responsible for their training and development. Kastor evaluated his employees' performances and made recommendations for pay increases based on those evaluations. He addressed employee grievances, and he also disciplined employees, when necessary, including verbal and written reprimands. All of these responsibilities and duties necessarily refute Kastor's claim that his management of the employees in his department was minimal.

Finally, Kastor argues that his salary was relatively equal to what the non-exempt team leader would have made if that person worked the same hours as he did. While Plaintiff declares that the team leader in the bakery department made between $12 and $13 per hour, he offers only a conclusory statement to support this allegation, and no predicate is provided for the statement. The summary judgment record reflects that in 1998, the last full year that Kastor worked for Sam's, his gross salary was $560.10 per week. *See* App. to Def.'s Br. in Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Exhibit E (1998 Earning Statement for William Kastor). Kastor ended his employment with Sam's in February 1999. At that time, the highest paid bakery associate held the position of "cake decorator" and made $10.50 per hour, which amounts to approximately $393.75 per week ($10.50/hr × 37.5 hrs).[4]

**4.** The court uses 37.5 because this was the maximum amount of hours per week that an

*Id.* at Exhibit F. Kastor's gross weekly salary was 42% higher than the weekly salary of the highest paid bakery associate at the time of his departure. Given that Kastor was paid a specific salary to manage the bakery, and that hourly employees were for the most part restricted to 37.5 hours per week, his statement that the highest paid hourly employee earned an amount comparable to his (Kastor's) salary distorts reality. A person in a management position necessarily, by virtue of that position, receives benefits that have the effect of compensation that an hourly worker does not receive. Additionally, the record establishes that Kastor received a bonus, which is common for executive employees in the corporate world, and there is no evidence in the record that hourly employees received such bonuses. For these reasons, the court determines that Plaintiff's argument that the pay of non-exempt employees was relatively comparable to his is a misapplication of the facts to the applicable law.

The court finds that Kastor's principal value to Sam's was manager of the bakery department and that his primary duty was to manage that department. Therefore, Sam's has satisfied the second prong of the "short test" for executive exemption.

The court now turns to the third prong of the "short test" for executive exemption, that is, whether Kastor's primary duty included the customary and regular direction of the work of two or more employees. Plaintiff admits that as manager of the bakery department he supervised more than two other people in that department. *See* Def. Mot. for Summ. J, Exhibit A (Oral Deposition of William Kastor, pp. 44–45); Declaration of William A. Kastor, ¶ 5. Kastor also admits that he directed the work of his employees 70–75% of the time. *See* Def. Mot. for Summ. J, Exhibit A

(Oral Deposition of William Kastor, pp. 76–77). The court, therefore finds that Kastor regularly and customarily directed the work of two or more other employees. Accordingly, Sam's has satisfied the third prong of the "short test" for an executive exemption.

Sam's has satisfied all three prongs of the "short test" for an executive exemption. The court therefore concludes that no genuine issue of material fact exists whether Kastor was an exempt executive employee under the FLSA. Because no genuine issue of material fact exists on this issue, Sam's is entitled to judgment as a matter of law on Kastor's claim for unpaid overtime compensation.[5]

## IV. Miscellaneous

Before the court is Defendant's Motion for Leave to File Affidavit of Stacey Craig Ryan, filed November 16, 2000. Plaintiff opposes the motion and contends that he will be prejudiced by the affidavit because he is unable to respond to the statements set forth in the affidavit. The court did not rely on or consider any portion of Ryan's affidavit in ruling on Defendant's summary judgment motion. The court thus finds the affidavit unnecessary insofar as ruling on the summary judgment motion. Accordingly, Defendant's Motion for Leave to File Affidavit of Stacey Craig Ryan is **denied.**

## V. Conclusion

For the reasons previously stated, the court concludes that Kastor was an exempt executive employee and not entitled to overtime compensation under the FLSA. Because no genuine issue of material fact exists regarding this issue, Sam's is entitled to judgment as a matter of law. Accordingly, Defendant Sam's Wholesale

---

hourly employee could work unless the additional hours were approved by the general manager.

**5.** The court, having determined that Plaintiff was an executive employee under the FLSA

and therefore exempt from receiving overtime pay, finds it unnecessary to decide whether Plaintiff satisfies the requirements of an administrative employee under the FLSA.

Club's Motion for Summary Judgment is **granted,** and this action is hereby dismissed with prejudice. Defendant's Motion for Leave to File Affidavit of Stacey Craig Ryan is **denied.** Judgment will be issued by separate document.