**Pam GELLHAUS, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

Civil Action No. 1:10–CV–123.

United States District Court, E.D. Texas.

March 10, 2011.

John Stephen Morgan, Harris, Duesler & Hatfield, LLP, Beaumont, TX, for Plaintiff.

Jim E. Cowles, Sim Israeloff, Cowles & Thompson, Dallas, TX, for Defendant.

## MEMORANDUM AND ORDER

MARCIA CRONE, District Judge.

Pending before the court is Defendant Wal–Mart Stores, Inc.'s ("Wal–Mart") Motion for Summary Judgment (# 23), wherein Wal–Mart seeks dismissal of Plaintiff Pam Gellhaus's ("Gellhaus") Fair Labor Standards Act ("FLSA") claim. Having considered the pending motion, the submissions of the parties, and the applicable law, the court is of the opinion that Wal–Mart's motion should be granted.

### I. *Background*

Gellhaus is a former employee of Wal–Mart, having worked with the company for approximately nine years. She began in 1994 as an hourly paid associate in one of Wal–Mart's several locations in Louisville, Kentucky, eventually rising to the position of assistant manager in late 2006 after completing twelve weeks of training. In April 2007, Gellhaus relocated to Lumberton, Texas, and began working in Wal–Mart's Port Arthur, Texas, store, where she served as a "front end" assistant manager for approximately three months and, later, assistant manager over fabrics, crafts, housewares, stationery, and home decor.

Shortly after beginning work at the Port Arthur store, Gellhaus's hours increased from those she was required to work in Louisville. While the actual amount of the increase is disputed by the parties, Gellhaus routinely worked anywhere from 50 to 70 hours per week, as opposed to the 45 hours she worked per week in Louisville. She also often worked during her scheduled days off. Gellhaus complained both to her store manager, Darlene Sutton Quirk ("Quirk"), and Wal–Mart regional and district management about the increase in hours, as well as the length of her commute to work.[1] Nonetheless, she never asserted that she was entitled to overtime pay or improperly classified as exempt from overtime.

---

1. There is conflicting evidence regarding the exact number of hours Gellhaus was typically scheduled to work per week. In an anonymous letter sent to company management, Gellhaus complained that she was required to work 55 to 70 hours per week. At deposition, however, Gellhaus testified that she "probably worked an extra ... four to five hours every day that [she] worked," bringing her total hours to approximately 70 to 75 hours per five-day workweek and 74–80 hours per six-day workweek. Moreover, Gellhaus admitted that her hours differed each week and that there is no way to know precisely how many hours she worked per week.

While employed as an assistant manager, Gellhaus's job duties consisted of supervising and disciplining up to 100 hourly employees; ensuring effective merchandising operations; walking her departments to identify necessary work; assigning and delegating tasks; guaranteeing quality control; and evaluating employee performance. Gellhaus also regularly performed manual labor alongside her subordinates, including unloading vendor trucks and restocking shelves. For these duties, Gellhaus was paid an annual salary of $38,500.

Frustrated with her schedule and the length of her commute, Gellhaus resigned at the end of her shift on or about September 13, 2007. She filed suit against Wal–Mart on July 22, 2009, on behalf of herself and those similarly situated, alleging that she was a non-exempt employee and, therefore, should have received overtime pay while employed by Wal–Mart. Wal–Mart filed the instant motion for summary judgment on December 6, 2010, contending that it is entitled to judgment as a matter of law because Gellhaus was exempt from overtime as an executive and/or administrative employee. Alternatively, Wal–Mart argues that Gellhaus failed to prove her damages with definite and certain evidence.

## II. *Analysis*

As a preliminary matter, Wal–Mart argues that the court should deny Gellhaus's request to certify a collective action on the basis that she failed to file a timely motion for certification. Gellhaus responds that she no longer wishes to pursue a collective action and stipulates to the dismissal of her class certification claim. Accordingly, Gellhaus's class certification claim is dismissed, and Wal–Mart's request is denied as moot.

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c)(2). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.,* 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006); *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "evidence must be adduced supporting each element of the defense and demonstrating the lack of any genuine issue of material fact with regard thereto." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002); *see Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1074 (5th Cir.), *cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986). To warrant judgment in its favor, the movant " ' "must establish beyond peradventure *all* of the essential elements of the defense." ' " *Martin v. Alamo Cmty. Coll. Dist.,* 353 F.3d 409, 412 (5th Cir.2003) (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.,* 307 F.3d 368, 372 (5th Cir.2002) (quoting *Fontenot,* 780 F.2d at 1194)); *accord Addicks Servs., Inc. v. GGP–Bridgeland, LP,* 596 F.3d 286, 293 (5th Cir.2010).

"A fact is material only if its resolution would affect the outcome of the action...." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir.2009); accord *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir.2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir.2001). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; accord *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir.2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454. The moving party, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir.2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir.2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n. 3, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir.2004) (*"Estate of Smith"*). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); see *Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir.2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097; *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir.2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Estate of Smith*, 391 F.3d at 624; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir.2003). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *Groh v. Ramirez*, 540 U.S. 551, 562, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir.2009); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir.2004); *Martin*, 353 F.3d at 412. The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner–Lambert Co.*, 581 F.Supp.2d 772, 779 (E.D.Tex.2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and sum-

mary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468–69, 112 S.Ct. 2072; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F.Supp.2d 582, 584–85 (S.D.Miss.), *aff'd*, 293 Fed.Appx. 273 (5th Cir.2008). The nonmovant's burden is not satisfied by " 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' " by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir.1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294–95 (5th Cir.2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir.2010); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir.2004).

▪ Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir.2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir.2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

**B. *FLSA***

▪ "In 1938 Congress enacted the FLSA as a means of regulating minimum wages, maximum working hours, and child labor in industries that affected interstate commerce." *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1024 (5th Cir. 1993) (citing 29 U.S.C. § 202); *see also Castellanos–Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 407 (5th Cir.2010); *Rodriguez v. Twp. of Holiday Lakes*, 866 F.Supp. 1012, 1017 (S.D.Tex.1994) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947)). The Act created minimum protections for individual workers to ensure that each employee would receive " ' "[a] fair day's pay for a fair day's work" ' " and would be protected from 'the evil of "overwork" as well as "underpay." ' " *Barrentine v. Ark.-Best Freight Sys., Inc.* ("*Barrentine I*"), 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt))). Accordingly, the FLSA establishes a minimum wage, regulations governing maximum hours, record-keeping and reporting requirements, provisions regulating child labor, and civil and criminal penalties for violation of any of its provisions. *Johnson v. RGIS Inventory Specialists*, 554 F.Supp.2d 693, 701 (E.D.Tex.2007); *Castillo v. Case Farms of Ohio, Inc.*, 96 F.Supp.2d 578, 636–37 (W.D.Tex.1999) (citing 29 U.S.C. §§ 201–219). Minimum wage and overtime requirements are the two central themes of the Act. *Hesseltine v. Goodyear Tire & Rubber Co.*, 391

F.Supp.2d 509, 515 (E.D.Tex.2005); *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884, 889–90 (E.D.Tex.1997) (quoting *Arnold v. Arkansas*, 910 F.Supp. 1385, 1392 (E.D.Ark.1995)). "'Section [6] ... of the FLSA mandates [an] ... hourly minimum wage due to all employees[, while] ... Section [7] delineates maximum work hour limitations.'" *Cash*, 2 F.Supp.2d at 890 (quoting *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1267 (4th Cir.1996)). The fundamental under lying theory behind the FLSA's minimum wage provisions is that employees are paid finally and unconditionally. *See Castellanos–Contreras*, 622 F.3d at 408; *Castillo*, 96 F.Supp.2d at 637. In other words, an employer is prohibited from taking certain self-serving deductions from an employee's wages. *See Castillo*, 96 F.Supp.2d at 637. Deductions are improper when they deprive a worker of the federally mandated minimum wage or overtime pay. *See id.*

### C. *Exemptions*

■ "Though the FLSA establishes a general rule that employers must pay their employees overtime compensation, executive, administrative, and professional employees are exempt." *Moore v. Hannon Food Serv., Inc.*, 317 F.3d 489, 492 (5th Cir.), *cert. denied*, 540 U.S. 938, 124 S.Ct. 76, 157 L.Ed.2d 250 (2003) (citing 29 U.S.C. § 213(a)(1)); *see also Belt v. EmCare, Inc.*, 444 F.3d 403, 407 (5th Cir. 2006); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264 (5th Cir.2000); *Lott v. Howard Wilson Chrysler–Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir.2000); *Smith v. City of Jackson*, 954 F.2d 296, 298 (5th Cir.1992); *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1224 (5th Cir.1990). "These exemptions are construed narrowly against the employer, and the employer has the burden of proving that an employee is exempt." *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir.2002) (citing *Dalheim*, 918 F.2d at 1224); *accord Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir.2010); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir.2006); *Singer v. City of Waco*, 324 F.3d 813, 820 (5th Cir.2003); *Vela v. City of Houston*, 276 F.3d 659, 666–67 (5th Cir.2001); *Smith*, 954 F.2d at 298.

■ The determination of whether an employee is exempt under 29 U.S.C. § 213(a)(1) involves a three-step process. *See Lott*, 203 F.3d at 331; *see also Tyler*, 304 F.3d at 402; *Dalheim*, 918 F.2d at 1226. First, the fact finder makes findings of historical fact regarding the nature and terms of employment. *See Cheatham*, 465 F.3d at 584; *Tyler*, 304 F.3d at 402; *Lott*, 203 F.3d at 331. Next, the fact finder draws inferences from the historical facts and applies the regulations and interpretations promulgated under § 213(a)(1). *See Dalheim*, 918 F.2d at 1226; *see also Cheatham*, 465 F.3d at 585; *Lott*, 203 F.3d at 331; *Smith*, 954 F.2d at 298. Finally, "the ultimate determination of whether an employer qualifies for an exemption under the FLSA is a question of law" for the court to decide. *Singer*, 324 F.3d at 818 (citing *Lott*, 203 F.3d at 331); *see also Cheatham*, 465 F.3d at 584; *Smith*, 954 F.2d at 298. "That ultimate determination, however, relies on many factual determinations that can be resolved by a jury." *Singer*, 324 F.3d at 818 (citing *Smith*, 954 F.2d at 298); *see also Dalheim*, 918 F.2d at 1226.

In 2004, the Department of Labor updated the federal regulations governing FLSA exemptions. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees ("Defining and Delimiting the Exemptions") 69 Fed.Reg. 22,122 (Apr. 23, 2004) (codified at 29 C.F.R. pt. 541). Prior to the revisions, the regulations generally required each of

three tests to be met for an exemption to apply:

> (1) The employee must be paid a predetermined and fixed salary that is not subject to reductions because of variations in the quality or quantity of work performed (the "salary basis test"); (2) the amount of salary paid must meet minimum specified amounts (the "salary level test"); and (3) the employee's job duties must primarily involve executive, administrative, or professional duties as defined by the regulations (the "duties tests").

*Id.* at 22,124. The terms "executive," "administrative," and "professional" were defined "by setting out 'long' tests for employees earning more than $155 per week but less than $250 per week, and 'short' tests for employees earning more than $250 per week." *Lott*, 203 F.3d at 331 (citing *Dalheim*, 918 F.2d at 1224); *accord Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1041 (5th Cir.1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1137 (5th Cir.1988); *see* 29 C.F.R. §§ 541.1–.3 (2003). Due to the "confusing, complex and outdated" nature of these regulations, the Department of Labor streamlined the existing regulations by adopting a single standard duties test for each exemption. Defining and Delimiting the Exemptions, 69 Fed.Reg. at 22,122; *see id.* at 22,130, 22,137, 22,148; *see also* 29 C.F.R. §§ 541.100–.300 (2004). The current regulations retain the salary basis and salary level tests, while replacing the long and short tests with a single standard duties test tailored to fit each exemption. *See id.* at pt. 541.

To qualify for an exemption under the FLSA, the employee's primary duty must be the performance of exempt work. *Id.* § 541.700(a). The term "primary duty" means "the principal, main, major, or most important duty that the employee performs," considering all of the facts in the case and with a particular emphasis on the character of the employee's job as a whole. *Id.; accord Rainey v. McWane Inc.*, 314 Fed.Appx. 693, 695 (5th Cir.2009); *Aguirre v. SBC Commc'ns, Inc.*, No. H–05–3198, 2007 WL 2900577, at *17–18 (S.D.Tex. Sept. 30, 2007), *aff'd*, 299 Fed.Appx. 315 (5th Cir.2008). Factors that may be considered in making this determination include but are not limited to: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a); *accord Rainey*, 314 Fed.Appx. at 695; *Aguirre*, 2007 WL 2900577, at *18; *Jackson v. City of San Antonio*, No. SA–03–CA–0049–RF, 2006 WL 2548545, at *9 (W.D.Tex. Aug. 31, 2006).

 The amount of time spent performing exempt work can be an especially useful guide in determining whether exempt work is the employee's primary duty, and employees spending more than fifty percent of their time performing exempt work will generally satisfy the primary duty requirement. *See Aguirre*, 2007 WL 2900577, at *18; *Mims v. Starbucks Corp.*, No. H–05–0791, 2007 WL 10369, at *3 (S.D.Tex. Jan. 2, 2007); 29 C.F.R. § 541.700(b). Time is not the sole test, however, and employees who spend less than fifty percent of their time performing exempt work may still meet the primary duty requirement if other factors support such a conclusion. *Mims*, 2007 WL 10369, at *3–4; 29 C.F.R. § 541.700(b). An employee's primary duty is what the employee does " 'that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time.' " *Mims*, 2007

WL 10369, at *3 (quoting *Dalheim,* 918 F.2d at 1227); *accord Rainey,* 314 Fed. Appx. at 695. Moreover, an employer may combine exemptions in cases where an employee fails to meet the primary duty requirement of any one exemption, but the employer must still establish the remaining elements of the exemptions at issue. *See IntraComm, Inc. v. Bajaj,* 492 F.3d 285, 294–96 (4th Cir.2007); *Villegas v. Dependable Constr. Servs., Inc.,* No. 4:07–CV–2165, 2008 WL 5137321, at *20 (S.D.Tex. Dec. 8, 2008); 29 C.F.R. § 541.708.

Here, Wal–Mart argues that Gellhaus was subject to either or both the executive and administrative exemptions to the FLSA and, therefore, was not entitled to overtime pay. Gellhaus responds that her daily duties included manual labor normally performed by hourly employees and, as such, neither the executive nor the administrative exemption applies in this instance.

### 1. *FLSA's Executive Exemption*

■ Section 541.100 defines "an employee employed in a bona fide executive capacity" as any employee who is:

(1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a); *accord Rainey,* 314 Fed.Appx. at 694–95; *Sappington v. Style–Line Furniture,* Civ. No. 1:06CV249–JAD, 2007 WL 3355838, at *2 (N.D.Miss. Nov. 8, 2007); *Aguirre,* 2007 WL 2900577, at *17; *Mims,* 2007 WL 10369, at *3. Here, Gellhaus concedes that she was compensated on a salary basis at a rate of not less than $455 per week, as she earned an annual salary of $38,500.[2] The parties further agree that Gellhaus regularly supervised the work of two or more other employees.[3] Thus, only the second and fourth prongs of the executive exemption test are in dispute.

### a. *Primary Duty of Management*

As explained in the FLSA regulations, management generally includes, but is not limited to, activities such as the following:

interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among

---

**2.** Gellhaus's annual salary equates to roughly $740 per week. According to Quirk, "her pay was significantly higher than the pay of hourly associates for similar hours of work." Gellhaus confirmed at deposition that her pay increased substantially when she was promoted to assistant manager.

**3.** Quirk stated in her affidavit that Gellhaus supervised between 25 and 100 full-time hourly associates. Gellhaus testified at deposition that assistant managers typically supervised 30 to 200 people, depending on the departments for which they were responsible.

the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102; *accord Sappington*, 2007 WL 3355838, at *3; *Aguirre*, 2007 WL 2900577, at *17; *see also Mims*, 2007 WL 10369, at *3.

Here, the court finds that Wal–Mart has provided ample evidence that Gellhaus's primary duty was management. For example, Gellhaus stated at deposition that she regularly performed the following tasks as assistant manager: overseeing and directing her subordinates, including department managers; participating in annual employee reviews; managing inventory and determining how to stock and display merchandise; authorizing or denying refunds for merchandise returned without a receipt; and conducting price adjustments. Notably, several of the above duties are also listed in § 541.102 as activities indicative of management. *See* 29 C.F.R. § 541.102. Moreover, Quirk stated the following in her affidavit:

Gellhaus's primary job duty was managing her assigned departments, including supervising and directing the hourly associates in her departments, driving sales, ensuring compliance with company policies, and providing customer service. Her management duties included planning the work in her departments, apportioning and delegating the work among the associates, monitoring merchandise stocking and ordering merchandise.... Her supervisory duties included interviewing and training employees, supervision and control of employee work in her de-

partments, appraising employee work for the purposes of job reviews and employment changes, handling employee complaints, and disciplining employees through "coachings for improvement." During evening shifts, when neither the Store Manager nor the Co–Manager was present, Gellhaus was responsible for the "total box," meaning the whole store.

Quirk's description of Gellhaus's job duties, therefore, also mentions certain activities indicative of management responsibility. *See* 29 C.F.R. § 541.102.

Gellhaus counters that while she participated in some management activities, the majority of her time was spent stocking shelves, unloading inventory, and performing other manual tasks reserved for hourly associates. The fact that Gellhaus often performed non-management tasks, however, does not necessarily preclude a finding of exempt status. *See Rainey v. McWane, Inc.*, 552 F.Supp.2d 626, 630 (E.D.Tex. 2008) ("[E]vidence that some [p]laintiffs spent time performing manual labor does not raise a genuine issue of material fact as to whether [p]laintiffs 'primary duty' was management."); *Mims*, 2007 WL 10369, at *8 (finding plaintiffs exempt despite the fact that they spent less than fifty percent of their time on management tasks); *Kastor v. Sam's Wholesale Club*, 131 F.Supp.2d 862, 866–67 (N.D.Tex.2001) (granting summary judgment in favor of employer where purpose of plaintiff's employment was managerial even though he spent ninety percent of his time on non-exempt tasks). Here, the record does not disclose the specific amount of time Gellhaus spent completing her various duties, although it strongly suggests that more than fifty percent of her time was devoted to management. Such a significant portion of time generally satisfies the primary duty requirement. *See Aguirre*, 2007 WL 2900577, at *18; 29 C.F.R. § 541.700(b).

■ In any event, even if the court were to assume that Gellhaus spent less than fifty percent of her time on managerial activities, the presence of other factors supports the conclusion that she was primarily engaged in exempt, executive work. Where an employee spends less than fifty percent of her time on managerial functions, courts ordinarily consider the following additional factors to determine whether her primary duty is management: (1) the relative importance of managerial duties compared to other duties; (2) the frequency with which the employee makes discretionary decisions; (3) the employee's relative freedom from supervision; and (4) the relationship between the employee's salary and the wages paid to employees who perform relevant non-exempt work. *Mims,* 2007 WL 10369, at *4 (citing 29 C.F.R. § 541.700(a)); *see Sappington,* 2007 WL 3355838, at *6; *see also Aguirre,* 2007 WL 2900577, at *18; *Kastor,* 131 F.Supp.2d at 866.

These factors, too, weigh in favor of the conclusion that Gellhaus's primary duties were managerial in nature. For example, it appears that Gellhaus's managerial duties were of greater importance than her more menial tasks. Namely, Gellhaus stated that she began each day by debriefing her department managers, handling paperwork and price changes, preparing the backroom merchandise for display, and collaborating with her superiors to devise creative solutions to any unexpected situations that arose. Quirk's affidavit confirms that Gellhaus's managerial tasks were of primary importance. Furthermore, the deposition testimony in this case establishes that Gellhaus often made discretionary decisions regarding employee discipline, merchandise stocking and displays, and handling customer complaints. Finally, Gellhaus received a "substantial" pay increase when she was promoted from hourly associate to assistant manager. There is conflicting evidence in the record regarding Gellhaus's freedom from supervision. Specifically, Gellhaus claims that her work was overseen closely by store managers. Nonetheless, considering all of the facts in this case and placing a particular emphasis on the character of the job as a whole, the court concludes that the activities Gellhaus performed that were of principal value to Wal–Mart were those related to her management of the front end of the store and, later, its housewares department. *See Mims,* 2007 WL 10369, at *3 (quoting *Dalheim,* 918 F.2d at 1227); *see also Aguirre,* 2007 WL 2900577, at *17–18; 29 C.F.R. § 541.700(a). Hence, Gellhaus's employment as Wal–Mart's assistant manager satisfies the primary duty prong of the executive exemption test.

b. *Authority with Respect to Hiring, Firing, and Related Matters*

The final prong under the executive exemption test requires that the employee have "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). An employee's suggestions or recommendations may still have "particular weight" even if a higher manager's recommendation has more importance and even if the employee does not make the ultimate determination. *Id.* § 541.105. Generally, such suggestions and recommendations must pertain to employees whom the executive customarily and regularly supervises and does not include an occasional suggestion concerning a change in status of a co-worker. *Id.* Factors that the court may consider in making this determination include, but are not limited to, the following:

whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with

which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon.

*Id.* "If final decision-making authority were the test for determining whether a person was an executive or administrative employee, one would rarely, if ever, qualify as such an employee under the regulations." *Kastor*, 131 F.Supp.2d at 867; *accord Williams v. Vynckier Enclosure Sys., Inc.*, No. H–04–3223, 2005 WL 2810709, at *9 (S.D.Tex. Oct. 27, 2005). Indeed, there is often a hierarchy in any organization wherein supervisors have persons to whom they must report, and the fact that an individual does not have final supervisory authority does not take that person out of the realm of being a manager in the organization. *See Kastor*, 131 F.Supp.2d at 868; *see also* 29 C.F.R. § 541.105.

Here, Gellhaus testified at deposition that interviewing and hiring employees and conducting "employee coaching," which were essentially performance reviews, were part of her duties as assistant manager. Indeed, some of her recommendations regarding hiring and changes in employee status were followed, as several of her subordinates received pay raises based in part on Gellhaus's review of their performance.[4] That Gellhaus's recommendations regarding hiring were given particular weight is confirmed by the affidavit of Quirk. Furthermore, she was tasked with disciplining employees under her supervision by issuing written or verbal warnings, the cumulation of which could result in termination. Thus, the totality of the evidence is sufficient to show, as a matter of

law, that Gellhaus's suggestions regarding hiring, firing, and change of employee status were given particular weight by Wal–Mart. *See Monroe Firefighters Ass'n v. City of Monroe*, 600 F.Supp.2d 790, 801 (W.D.La.2009) (finding plaintiffs' recommendations regarding other employees were given particular weight where their duties included conducting performance reviews and their superior testified he depended on their recommendations); *Aguirre*, 2007 WL 2900577, at *25 (granting summary judgment for employer where plaintiffs' job duties included making recommendations about their subordinates and employer produced evidence that those suggestions were relied upon); *Roberts v. Nat'l Autotech, Inc.*, 192 F.Supp.2d 672, 678 (N.D.Tex.2002) (holding that plaintiff fell within the final prong of the FLSA's executive exemption where he performed formal and informal evaluations of subordinates, disciplined employees, and recruited and hired one individual).

Gellhaus claims that her recommendations regarding employee status were not regularly followed. Specifically, she maintains that her disciplinary write-ups were rarely acted upon by upper management.[5] Quirk's affidavit, however, indicates that she regularly followed Gellhaus's recommendations. Specifically, Quirk stated: "As the Store Manager, I made the ultimate decision as to hiring or firing, but I relied on, considered, and gave particular weight to the input and recommendations of Assistant Managers, including Gellhaus, and frequently followed their recommendations." Moreover, as discussed above,

---

4. Gellhaus first stated that she did not recommend pay increases for any employees under her supervision. Nonetheless, when confronted later during her deposition with performance review summaries bearing her signature, Gellhaus conceded that she conducted such reviews when needed and that they

sometimes resulted in a pay increase for the reviewed employee.

5. Despite this claim, Gellhaus gives no specific examples of disciplinary recommendations that were rejected by her superiors.

Gellhaus's assertions do not preclude a finding that she satisfies this prong of the executive exemption. *See* 29 C.F.R. § 541.105. Indeed, she has offered no evidence, aside from her own subjective beliefs, to support this contention. *See Buechler v. DavCo Rests., Inc.*, No. WDQ–09–0227, 2009 WL 3833999, at *6 (D.Md. Nov. 16, 2009) (finding assistant manager fell within final prong of executive exemption where his job description included interviewing and recommending candidates for employment, even though there was no evidence of the frequency with which plaintiff's suggestion was requested or relied upon); *Monroe Firefighters Ass'n*, 600 F.Supp.2d at 801 (granting summary judgment despite plaintiffs' testimony that their evaluations of fellow employees carried no weight, where plaintiffs "failed to explain the basis for their subjective beliefs, nor . . . [gave] examples supporting their beliefs"); *Rozenblum v. Ocean Beach Props.*, 436 F.Supp.2d 1351, 1363–64 (S.D.Fla.2006) (holding plaintiff's recommendations were given weight where there was a genuine issue of material fact as to whether plaintiff had authority to hire and fire but it was undisputed that he made recommendations regarding changes in status); *Williams*, 2005 WL 2810709, at *8 (finding plaintiff's recommendations regarding hiring and discipline were given particular weight despite the fact that "it [was] unclear with what frequency such suggestions . . . were relied upon").

In sum, the court finds that the record in this case contains adequate evidence to show that Gellhaus's suggestions and recommendations as to the hiring, firing, advancement, promotion, or change of status of other employees in her departments were given particular weight. Although Gellhaus did not have the sole authority to make these decisions, her influence over such matters was sufficient to fulfill this requirement. Thus, Wal–Mart has satisfied its burden of establishing that Gellhaus meets each of the elements of the executive exemption test, and the court concludes her claim for overtime compensation under the FLSA fails as a matter of law. Therefore, summary judgment in Wal–Mart's favor is warranted on this basis.

### 2. Remaining Issues

Because the court finds that Gellhaus falls within the executive exemption of the FLSA and, therefore, is not entitled to overtime pay, it need not address the remaining issues; namely, whether she falls within the FLSA's administrative exemption or whether she can prove her damages with definite and certain evidence.

### III. Conclusion

For the foregoing reasons, the court finds that Gellhaus has failed to present a claim that merits relief. There remain no material facts in dispute, and Wal–Mart is entitled to judgment as a matter of law. Accordingly, Wal–Mart's motion for summary judgment is GRANTED.