Charles E. SMITH, et al.,
Plaintiffs–Appellees,

v.

The CITY OF JACKSON, MISSISSIPPI,
Defendant–Appellant.

No. 90–1953.

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1992.

Matthew M. Moore, Deputy City Atty., Jackson, Miss., for defendant-appellant.

Elizabeth L. Gilchrist, Jackson, Miss., for plaintiffs-appellees.

Before POLITZ, Chief Judge, REAVLEY and JOLLY, Circuit Judges.

POLITZ, Chief Judge:

The City of Jackson, Mississippi appeals an adverse judgment on jury verdict for overtime pay which certain firefighters claimed under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219. Concluding that FLSA exempts the plaintiffs from the overtime pay requirement we reverse.

### Background

Plaintiffs are either district or battalion chiefs in the Combat Division of the City of Jackson Fire Department. A fire chief heads the department; a deputy chief heads the Combat Division. Those two administrators set department policy. The Combat Division performs the firefighting duties and is supported by a separate Administrative Division.

The city is divided into four districts, each served by five to seven fire stations. Each district chief oversees the 30 to 40 fire department employees assigned to the stations within that chief's district. Battalion chiefs are responsible for the business district and exercise authority over the district chiefs. Each station has at least one captain who is responsible for one piece of fire equipment and the attendant crew. The captains are also responsible for station maintenance and cleanup schedules. The district and battalion chiefs supervise the captains and are responsible for recommending to the fire chief any disciplinary action which may be appropriate.

The district and battalion chiefs work alternating shifts of 24 hours on and 48 hours off. Each workday the chiefs visit all stations within their districts. They handle all paperwork routed between the fire chief or administrative personnel and the stations. Each shift the district chiefs secure and log the work hours of all station personnel and report the data to the battalion chiefs who collect all reports of their district chiefs for transmittal to the administrative office. Each shift the district and battalion chiefs spend approximately one hour on the work logs and one and one-half hours visiting stations. The vast majority of their time is spent waiting to respond to firefighting or lifesaving dispatch calls.

The district and battalion chiefs are responsible for ensuring that each station has adequate firefighters and equipment ready to respond to calls for their services. These chiefs direct firefighting and lifesaving operations. When a firetruck is dispatched to a fire a captain accompanies the vehicle and takes initial charge at the scene. District and battalion chiefs respond to structural fire alarms but generally do not respond to grass or automobile fires. When a district chief responds he assumes control of the operation and may call for such additional equipment and firefighters as he deems necessary. The district chief decides when the units and personnel may withdraw from a scene and whether an arson investigation is warranted. A battalion chief on the scene typically assumes control of the scene. On infrequent occasions district and battalion chiefs may participate "hands on" in the firefighting operation.

There is a departmental training center and the captains supervise routine training drills, but the district and battalion chiefs are responsible for ensuring that the training is adequate. The district chiefs annually evaluate the performance of the captains. The battalion chiefs make annual evaluations of their district chiefs. In addition, battalion chiefs are charged with maintaining and updating the city's firefighting plans for major buildings.

The city declined to pay the overtime premium, contending that the district and battalion chiefs were exempt from that requirement because they were administrative and executive employees. The jury returned a contrary verdict and the city timely appealed.

### Analysis

■■■■■ Executive and administrative employees are exempt from the overtime compensation provisions of the FLSA. 29 U.S.C. § 213(a)(1). The decision "whether an employee is exempt under the Act is primarily a question of fact which must be reviewed under the clearly erroneous standard...." *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1137 (5th Cir.1988) (quoting *Cobb v. Finest Foods, Inc.*, 755 F.2d 1148 (5th Cir.1985), and quoted in *Dalheim*, infra). Although historical facts regarding the employment history, and inferences based on these facts, are reviewed under the factual standard, the ultimate decision whether an employee is exempt is a question of law. *Dalheim v. KDFW–TV*, 918 F.2d 1220 (5th Cir.1990). Exemptions are to be narrowly construed. The burden of proving the applicability of a claimed exemption is on the employer. *Brennan v.*

*Corning Glass Works*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

An executive employee is an employee whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein....

29 C.F.R. § 541.1(f).[1] Management duties clearly include: training subordinate employees; directing their work; maintaining work records; evaluating work for the purpose of recommending changes in status; handling employee complaints, grievances, and discipline; planning work; determining techniques used; apportioning work; and controlling the flow and distribution of materials. 29 C.F.R. § 541.102.[2]

An administrative employee is an employee

whose primary duty consists of the performance of [office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers], which includes work requiring the exercise of discretion and independent judgment....

29 C.F.R. § 541.2(e)(2) (insertion from section 541.2(a)(1)).[3] Activities directly related to management policies are "those types of activities relating to the administrative operations of a business as distinguished from 'production.'" 29 C.F.R. § 541.-205(a). Production activities in the context of municipal services are activities that appear to be related to the primary service goal of the agency.[4] "[T]he exercise of

---

1. This definition is applicable to employees with salaries of not less than $250 per week; it is undisputed that the plaintiffs fall in this salary range.

2. Other duties, not listed, that fall within the definition of management appear to be undisputed.

3. Because the plaintiffs receive a salary of at least $250 per week, the city need only demonstrate that the plaintiffs meet the short test of 29 C.F.R. § 541.2(e)(2).

4. *See* Administrative Letter Rulings; Department of Labor, Wage and Hour Division, Fair Labor Standards Handbook, App. III, pp. 216, 217 (May 19, 1988). This letter ruling discussed the production of a sheriff's office: "Insomuch as the [ ] County Sheriff's Office has law enforcement as its primary function, the law enforcement activities performed ... would appear to be related more to the ongoing day-to-day 'production' operations of the Department than to management policies or 'general business operations.'"

discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a).

 In the ordinary case an employee's primary duty involves over 50% of the employee's work time; however, this usual rule-of-thumb may be varied, depending on the importance of the managerial duties as compared with other duties, frequency of exercise of discretionary power, freedom from supervision, and comparative wages. 29 C.F.R. § 541.103; *see also Dalheim v. KDFW–TV*. It is undisputed that the plaintiffs regularly were engaged in the managerial and supervisory activities of checking on their district stations, compiling and reporting employee work hours, evaluating subordinate employees, and reviewing firefighting plans. The plaintiffs were immediately involved in the training and discipline of subordinate personnel. The plaintiffs contend, however, that the rest of their remaining time was devoted to the nonexempt activity of fighting fires or waiting to fight fires. Therefore, the plaintiffs argue, they do not meet the primary duty requisite of either the executive or administrative employee because only a small portion of their entire work time was devoted to exempt work.

We do not agree. The vast majority of the work time of the plaintiffs is spent waiting to respond to an emergency dispatch. Their employment status thus depends on how this time is categorized. We conclude that this waiting time assumes the character of the work the plaintiffs perform once dispatched to an emergency scene. It is undisputed that once the district and battalion chiefs arrive at a scene they are in charge. Their supervision of the firefighting and lifesaving efforts constitutes direction of the work of two or more employees. 29 C.F.R. § 541.1(f). This nonmanual work is directly related to the firefighting operation and requires the

exercise of discretion and independent judgment. 29 C.F.R. § 541.2(e)(2).

This categorization of the waiting time is consistent with our holding in *Paul v. Petroleum Equipment Tools Co.*, 708 F.2d 168 (5th Cir.1983). After determining that an employee pilot was acting in an exempt professional capacity while flying a plane, *see* 29 C.F.R. § 213(a)(1), we had to determine whether flying was the pilot's primary duty. One-third of his time was spent flying. A minimal amount of ground time was spent on routine, nonexempt tasks. The rest of the pilot's time, including waiting time, was credited to the exempt flying category. In making this categorization, we reasoned that this time was " 'necessarily incident' to flying." *Id.* This rationale applies to the district and battalion chiefs' roles in waiting to direct operations at a fire scene.

For these reasons we conclude that the plaintiffs are exempt employees under the FLSA and, as such, are not entitled to payment under the overtime provisions of the Act. We therefore reverse the judgment awarding overtime premium pay, costs, and fees.

REVERSED.

---

The jury was instructed, without objection, that the Jackson Fire Department has as its primary function fire protection activities.