[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11718
_____

D.C. Docket No. 2:11-cv-00158-MEF-WC

ROOSEVELT WATKINS, *et al.*,

Plaintiffs-Appellants,

versus

THE CITY OF MONTGOMERY, ALABAMA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(December 24, 2014)

Before ED CARNES, Chief Judge, JORDAN and ROSENBAUM, Circuit Judges.

ROSENBAUM, Circuit Judge:

Fifty-four fire suppression lieutenants employed by the City of Montgomery, Alabama (the "City"), contend that they are entitled to overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 207(a) (the "FLSA" or the "Act"). But a jury has spoken and has rejected their claims.

After careful review of the record, we find that the issues that the jury determined were properly before it and that the jury's conclusions on those issues were reasonable, in light of the evidence presented during the trial. We further find that the district court sufficiently instructed the jury before the jury reached its verdict denying the lieutenants' claims. For these reasons, we affirm.

## I.

The lieutenants challenge two particular rulings of the district court. First, they assert that the district court erred in denying their motion for judgment as a matter of law because the jury verdict was wrong as a matter of law. Second, they contend that the district court incorrectly refused to give the jury a particular instruction that the lieutenants requested. We consider each argument in turn.

## II.  The Motion for Judgment as a Matter of Law

We review *de novo* a district court's denial of judgment as a matter of law. *Bianchi v. Roadway Express, Inc.*, 441 F.3d 1278, 1282 (11th Cir. 2006) (per curiam). Where a legally sufficient basis exists for a reasonable jury to find for a

2

particular party on an issue, judgment as a matter of law is not proper.  *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1114 (11th Cir. 2005).

## A.

The plaintiff lieutenants claim that the City was required to pay them overtime because they were not exempt from the FLSA's overtime-pay requirements.  A general understanding of the FLSA's overtime-pay requirements, therefore, is helpful to put into context the background of this case.  For this reason, we start our consideration of this appeal with a review of the applicable parts of the FLSA.

The FLSA is designed to ensure "all able-bodied working men and women a fair day's pay for a fair day's work."  *Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1307-08 (11th Cir. 2009) (per curiam) (citation omitted).  To accomplish this goal, the FLSA requires that overtime be paid to employees who fall under the Act, at a rate of one-and-one-half times the employee's base pay.  *Id.* at 1302. Typically, employees are paid overtime when they work more than forty hours in a workweek.  *Id.*  Section 207(k) of the Act, however, provides an exception to the forty-hour workweek for "any employee in fire protection activities."  29 U.S.C. § 207(k).  Under the Department of Labor ("DOL") regulations interpreting § 207(k), employees engaged in fire-protection services must be paid overtime for all

3

time worked over 106 hours in a fourteen-day work period.  29 C.F.R. § 553.230(c).

The Act also creates a number of exemptions from its minimum wage and overtime requirements.  As relevant to this case, one such exemption exists for individuals "employed in a bona fide executive . . . capacity."  29 U.S.C. § 213(a)(1).  We construe this statutory exemption narrowly, like we construe all other exemptions under the FLSA.  *Gregory*, 555 F.3d at 1302.  The employer bears the burden of establishing that it is entitled to an FLSA exemption.  *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008).

An employer wishing to demonstrate that its employee falls under the FLSA's executive exemption must establish that

> (1) [the employee is] [c]ompensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) [the employee's] primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) [the employee] customarily and regularly directs the work of two or more other employees; and
>
> (4) [the employee] has the authority to hire or fire other employees or [that the employee's] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other

4

> change of status of other employees are given particular weight.

*See* 29 C.F.R. § 541.100(a).

The first prong of the executive exemption, known as the "salary basis" test, is at issue here. An employee is considered to be paid on a "salary basis" if

> the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is *not subject to reduction* because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a) (emphasis added). This general rule prohibiting deductions from an employee's paycheck is subject to a number of exceptions. Deductions from pay are permissible when the exempt employee (1) is "absent from work for one or more full days for personal reasons, other than sickness or disability"; (2) is absent from work for "one or more full days occasioned by sickness or disability . . . if the deduction is made in accordance with a *bona fide* [sick leave] plan"; (3) is penalized "in good faith for infractions of safety rules of major significance"; or (4) receives a "disciplinary suspension[] of one or more full days imposed in good faith for infractions of workplace conduct rules." *See* 29 C.F.R. § 541.602.

Two of these exceptions are at issue here: (1) deductions for violations of safety rules of major significance and (2) deductions for violations of workplace conduct rules. Safety rules of major significance include "those relating to the

5

prevention of serious danger in the workplace or to other employees, such as rules prohibiting smoking in explosive plants, oil refineries and coal mines." 29 C.F.R. § 541.602(b)(4).

The exception relating to workplace conduct rules was added as a part of the August 2004 amendments to the DOL regulations interpreting the executive, administrative, and professional exemptions. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 (April 23, 2004). We have not yet addressed or otherwise interpreted the term "workplace conduct rules." The preamble to the DOL regulations, however, provides some guidance, noting that the addition of this exception "will permit employers to hold exempt employees to the same standards of conduct as that required of their nonexempt workforce." 69 Fed. Reg. at 22177.

The term "workplace conduct" is not to be construed expansively. *Id.* Instead, it covers only "serious workplace misconduct like sexual harassment, violence, drug or alcohol violations, or violations of state or federal laws." *Id.* "[W]orkplace misconduct," in turn, refers to conduct and was not meant to apply to performance or attendance issues. *Id.* Although the term should be construed narrowly, the rule does not prevent an employer from imposing a disciplinary suspension for misconduct that occurs off the employer's property if the employer

6

has a *bona fide* rule covering such conduct.  *Id.*  Suspensions must be imposed pursuant to a written policy applicable to all employees.   29 C.F.R. § 541.602(b)(5).  The written policy need not include an exhaustive list of specific violations that could result in a suspension, but it "should be sufficient to put employees on notice that they could be subject to an unpaid disciplinary suspension."[1]  69 Fed. Reg. at 22177.

## B.

## 1.

Roosevelt Watkins, a lieutenant in the Division of Fire Suppression of the Montgomery Fire Department ("MFD"), brought a collective action against his employer, the City of Montgomery, pursuant to the FLSA, seeking overtime

---

[1] Even if an employer makes improper deductions based on suspensions not covered by the exceptions to the salary-basis test, the exempt status of the employee is not necessarily destroyed.  Rather, an employer who makes improper deductions will lose the exemption if "the facts demonstrate that the employer did not intend to pay employees on a salary basis."  *See* 29 C.F.R. § 541.603(a).  An "actual practice" of making improper deductions generally satisfies the intent requirement.  But even if the employer is shown to have an "actual practice" of making improper deductions, the exemption is lost only "during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions."  *See* 29 C.F.R. § 541.603(b). Moreover, isolated or inadvertent deductions will not destroy the exemption if the employer reimburses the employees for such improper deductions.  *See* 29 C.F.R. § 541.603(c).  Finally, the DOL regulations also include a "savings clause," which may apply in situations where employers have made improper deductions from their employees' paychecks.  *See* 29 C.F.R. § 541.603(d).  So even if an employer makes a deduction from a paycheck that does not fall within any of the exceptions to the salary-basis requirement, an employee may still be considered exempt for purposes of the FLSA if the savings clause applies.  The "actual practice" and "savings clause" provisions of the DOL regulations are not at issue in this appeal, so we do not discuss them further.

compensation. Watkins contended that he was entitled to overtime compensation as a non-exempt "first responder" under the DOL's "first responder" regulation, 29 C.F.R. § 541.3(b). In response to his claims, the City raised an affirmative defense under the executive exemption to the FLSA's overtime requirements. The district court certified the matter as a collective action, and fifty-three other MFD Fire Suppression lieutenants joined the action asserting claims for overtime compensation.

## 2.

The MFD's Fire Suppression Division is made up of twenty-two fire companies. The MFD lieutenants command a fire company, which consists of one officer (*i.e.*, a captain or a lieutenant), one sergeant, and two firefighters. Four district chiefs also work during each twenty-four hour shift. When lieutenants are on duty, they are the highest ranking officers in charge of their assigned companies and their duty is to supervise other firefighters in their companies while at the fire station and when responding to emergency calls.

Each company operates on a repeating cycle of three twenty-four hour shifts: A shift, B shift, and C shift. The three shifts of twenty-four hours are followed by forty-eight hours off. Based on this schedule, the MFD lieutenants typically work 104, 112, and 120 hours in successive pay periods. They do not receive overtime compensation.

The Personnel Board of the City and County of Montgomery has a policy prohibiting improper deductions from exempt employees' pay. The policy, however, also provides that "[a]ppointing authorities may make deductions from the wages of exempt employees for . . . suspensions for violation of workplace safety rules and workplace conduct rules." The policy further provides,

> If an employee believes that an impermissible deduction has been made, the employee should contact his/her payroll office of the Personnel Department. In the event that an impermissible deduction has been made, the employee will be reimbursed for the improper deduction and a good faith commitment will be made to comply with proper deductions in the future.

**3.**

The MFD lieutenants contended at trial that the City made improper deductions from their wages for suspensions for behavior that did not fall under the permissible exceptions of either violations of safety rules of major significance or violations of workplace conduct rules.[2] As a result, the MFD lieutenants asserted, they were not exempt executives under the FLSA's overtime-pay requirements.

The fourteen suspensions at issue fall into five general categories: (1) responding to the wrong address; (2) leaving before the end of a shift; (3) violations of the law; (4) disrespect towards a superior officer; and (5) violations of the City's weight policy. During the trial, the testimony of Chief John Petrey

---

[2] The twelve MFD lieutenants receiving the fourteen suspensions did not object to the suspensions at the times that they were imposed.

established that the City had rules prohibiting each of the disciplinary violations committed by the lieutenants.  For instance, Chief Petrey testified that the City had set forth rules prohibiting lieutenants from (1) leaving their shifts early; (2) being overweight; (3) being disrespectful to supervisors; and (4) participating in illegal conduct.  The City also had promulgated a rule that required fire lieutenants to know the addresses of the territory in which they worked.  Chief Petrey testified that each of these rules applied to all uniformed members of the Montgomery Fire Department.  Barbara Montoya, Director of the City of Montgomery Personnel Board, also testified during the trial that particular allowable deductions were based upon the FLSA regulations.  In addition, the parties offered evidence pertaining to the reasons for these rules and the potential consequences to MFD operations resulting from violations of these types.

At the close of the evidence, the lieutenants moved for judgment as a matter of law "on the fact that the [C]ity ha[d] failed to prove a prima facie case that the [lieutenants] [met] each and every element of the executive exemption."  The district court denied the motion, concluding that a reasonable jury "would have a legally sufficient evidentiary basis to find for the [C]ity on the issue of the executive exemption."

In instructing the jury on how to consider the suspensions and how to determine whether the lieutenants were paid on a salary basis, the district court

10

provided detailed direction that essentially tracked the DOL's guidance on these

issues:

> The first element that the City must prove as part of the executive exemption is that it compensated the Plaintiffs on a salary basis.  Although the parties agree that Fire Suppression Lieutenants are paid more than $455.00 per week, they do not agree that the Plaintiffs were paid on a salary basis, because the Plaintiffs contend that they were subject to impermissible disciplinary suspensions without pay. . . .
>
> . . .
>
> An employee is paid on a salary basis if the employee is regularly paid, on a weekly or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, and the amount is not subject to reduction because of variations in the quality or quantity of the work performed.  This means that the amount of compensation a Fire Suppression Lieutenant receives generally cannot be subject to reductions because of variations in the quality of the work the Plaintiffs performed.
>
> However, certain reductions from salaried employees' pay are permissible under the Department of Labor regulations.  The Plaintiffs contend that there are only two types of improper deductions at issue in this case.
>
> The City may reduce a salaried employee's pay in good faith to penalize an employee for infractions of safety rules of major significance.  Under the regulations, safety rules of major significance include those relating to the prevention of serious danger in the workplace or to other employees, such as rules prohibiting smoking in explosive plaints, oil refineries and coal mines.
>
> The City may also suspend a salaried employee without pay in good faith for a full day or more without pay for

11

infractions of workplace conduct rules.  The term "workplace conduct" refers to conduct, not performance or attendance issues.  Unpaid disciplinary suspensions must be made pursuant to written policy applicable to all employees.  However, the fact that the employee's misconduct occurred off the employer's property should not preclude an employer from imposing a disciplinary suspension, as long as the employer had a bona fide workplace conduct rule that covers such off-site conduct. The Department of Labor regulations give some examples of permissible suspensions for infractions of written workplace conduct rules.  These examples include, but are not limited to:

> a.  Suspending an exempt employee without pay for three days for violating a generally applicable written policy prohibiting sexual harassment;
>
> b.  Suspending an exempt employee without pay for twelve days for violating a generally applicable written policy prohibiting workplace violence.

Plaintiffs contend they are not paid on a salary basis as required for them to be properly classified as bona fide executives due to the fact that they are subject to disciplinary suspensions without pay for infractions unrelated to violations of "safety rules of major significance" or written "workplace conduct rules."  On the verdict form, you will be asked to render an advisory opinion on whether these disciplinary suspensions were permissible under the FLSA and its interpreting regulations.

Finally, the district court provided the jury with a list of the particular suspensions at issue.[3]

_____

[3] The district court advised the jury that the parties had stipulated to the following facts:  Lieutenant C.K. Tranthom was suspended without pay for 4 days in August 2008 for leaving early without permission; Plaintiff M.D. Thomas was suspended without pay for 1 day in

12

Armed with these detailed instructions and the testimony that it heard during trial, the jury responded in the following way to these questions on the verdict form:

Do you find by a preponderance of the evidence:

1.      That the Plaintiffs are paid on a salary basis?  Yes.

2.      That Plaintiffs' primary duty is the management? Yes.

3.      That the Plaintiffs have the authority to hire and fire or that their suggestions or recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight?  Yes.

. . .

5.      That the disciplinary suspensions without pay to which the parties have stipulated were

---

January 2012 for being overweight; Lieutenant A.W. Wiggins was suspended without pay for 5 days in June of 2008 for being overweight; Lieutenant L.P. Stewart was suspended without pay for 5 days in September 2008 for being overweight; Plaintiff G.A. Treloar was suspended without pay for 5 days in May 2009 for being overweight; Plaintiff Watkins was suspended without pay for 4 days in March 2008 for driving to the wrong address; Plaintiff G.A. Treloar was suspended without pay for 4 days in May 2008 for missing a street; Plaintiff J.A. Money was suspended without pay for 4 days in August 2008 for driving to the wrong address; Plaintiff S.L. Lewis was suspended without pay for 4 days in February 2009 for driving to the wrong address; Lieutenant D.W. Dillard was suspended without pay for 3 days in May 2008 for calling a District Chief "The Queen"; Plaintiff R.L. Garmon was suspended without pay for 29 days for disrespecting a District Chief; Lt. L.P. Stewart was suspended without pay for 29 days in April of 2011 for being disrespectful to an Assistant Chief; Lieutenant L. McDade was suspended without pay for 9 days in September of 2008 for receiving a reckless driving ticket; Lieutenant R.T. Crawford was suspended without pay for 5 days in October for receiving a ticket for fireworks.

13

permissible?  Yes.

Following the jury's verdict, the lieutenants renewed their motion for judgment as a matter of law.  They argued that whether the suspensions imposed accurately could be characterized as being for violations of a safety rule of major significance or a workplace conduct rule necessarily constituted an issue of law, not an issue of fact for a jury to resolve.  The district court apparently assumed that the lieutenants' contention was correct and considered the jury's verdict as advisory on the question of whether the deductions were permissible.  But the district court still denied the lieutenants' motion because it determined that, as a matter of law, each of the violations qualified as a violation of either a safety rule of major significance or a workplace conduct rule.

## C.

On appeal, the MFD lieutenants again urge that whether the suspensions imposed accurately could be characterized as being for violations of a safety rule of major significance or a workplace conduct rule necessarily presents an issue of law, not an issue of fact for a jury to resolve.  They invite us to determine whether, as a matter of law, the specific deductions taken by the City for the fourteen suspensions fall into either of the permissible categories relevant here.  We decline their invitation.

14

We acknowledge that the question of whether pay deductions for exempt employees are permissible under the FLSA can present a question of law that falls outside the province of the jury. But that is not necessarily the case, and it was not the situation here.

Instead, the jury first had to resolve issues of fact to determine whether the deductions at issue qualified as permissible under the DOL's guidance. That made the question that the jury considered a mixed question of law and fact. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S. Ct. 2126, 2133 (1976) (an issue may be properly characterized as a mixed question of law and fact when it involves "the application of a legal standard to a particular set of facts"). Issues involving mixed questions of law and fact are typically resolved by juries. *See, e.g., United States v. Gaudin*, 515 U.S. 506, 512, 115 S. Ct. 2310, 2314 (1995) (citing *TSC Indus., Inc.*, 426 U.S. at 450, 96 S. Ct. at 2133 (1976)).

For example, with respect to the deductions for violating the weight policy, without more, the evidence that lieutenants were suspended for violating it sheds no light on the significance, if any, of the City's weight policy—that is, whether that policy constitutes either a safety rule of major significance or a workplace conduct rule. We have previously explained that, for a rule to qualify as a safety rule of major significance, it must regulate conduct that can create a "serious danger" to the employer or to other employees. *Avery v. City of Talladega*, 24

15

F.3d 1337, 1341-42 (11th Cir. 1994).  And the DOL guidance notes that workplace misconduct refers to "serious workplace misconduct . . . ."  69 Fed. Reg. at 22177.

But the mere fact that deductions occurred for violations of the City's weight policy does not tell us why the City had such a policy or what the possible practical consequences of a violation of the policy may be, if any, to other employees of the MFD.  Nor does it provide any indication as to whether violation of the weight policy amounts to "serious . . . misconduct."  This critical information must be considered in determining whether a rule constitutes either a safety rule of major significance or a workplace misconduct rule.  Moreover, when the parties do not agree on the answers to these questions, an issue of fact arises concerning them, and a jury may resolve such questions.  That is precisely what occurred during the trial in this case.

As it related to the City's weight policy, Chief Kelly Gordon testified that the leading cause of death of a firefighter on the scene of an emergency is a heart attack—that "fifty percent of the fatalities in firefighting [are] a direct result of a heart attack."  Chief Gordon also testified that a firefighter who is overweight is "absolutely" more likely to suffer a heart attack at the scene of the fire and that when a firefighter "goes down" at the fire-fighting scene due to a heart attack, it "puts a strain on the suppression operation, because . . . we have to start treating the individual and taking care of him, whether we do it with on-scene individuals

16

or call out additional units." This type of situation, according to Chief Gordon's testimony, could put the lives of the other firefighters in danger. District Chief Dennis Ware also testified at trial that the leading cause of death at the scene of a fire is a heart attack. District Chief Ware further agreed with Chief Kelly that if a firefighter were to suffer a heart attack on the fire-fighting scene, it would put lives in danger.

The jury was entitled to believe this testimony. Since it apparently did, the jury could have applied the law to the facts that it found to reasonably conclude that a fire lieutenant's violation of the weight policy would jeopardize his fellow firefighters on the fire ground and would constitute violation of a safety rule of major significance.

The jury similarly heard evidence concerning whether the other rules underlying the deductions for suspensions were either safety rules of major significance or workplace conduct rules.[4] For each category of rule violation, the jury had to make factual determinations about evidence that was presented during the trial and then apply the law to its factual determinations to evaluate whether the

---

[4] No additional evidence was presented with regard to the deductions for suspensions for violations of law. But the DOL guidance clearly provides that the phrase "serious workplace misconduct" includes "violations of state or federal laws." 69 Fed. Reg. at 22177. Even if the two deductions for violations of the law here were for violations of local law, if any error were made in finding that they were for permissible deductions—a conclusion that we do not reach— any such error was harmless. Two improper deductions for 54 employees over a span of more than three years was not enough to qualify as an actual practice of making improper deductions in this case.

17

deductions were for violations of either safety rules of major significance or workplace conduct rules.

Based on the evidence presented at trial, a reasonable jury could have found that each of the categories of disciplinary suspensions and deductions was permissible because each fell under either a safety rule of major significance or a workplace conduct rule.  Since a reasonable jury could have found for the City on this issue—and did, in fact, so find, we affirm the district court's denial of judgment as a matter of law.[5]  Indeed, where a legally sufficient basis exists for a reasonable jury to find for a particular party on an issue, judgment as a matter of law is not proper.  *See Cook*, 402 F.3d at 1114.

### III.  The Rejected Jury Instruction

### A.

We review the district court's refusal to give a proposed jury instruction for an abuse of discretion.  *United States v. Langston*, 590 F.3d 1226, 1235 (11th Cir. 2009); *Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1288 (11th Cir. 1998).  Our role "in reviewing a trial court's jury instructions [] is to assure that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law."  *S.E.C. v. Yun*, 327 F.3d 1263, 1281 (11th Cir. 2003) (internal

---

[5] Although the district court denied the lieutenants' motion for judgment as a matter of law on different grounds, we may affirm a district court's decision to grant or deny a motion for any reason supported by the record.  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007) (citation omitted).

quotation marks and citation omitted).  "We will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous and prejudicial."  *Id.*

### B.

The MFD lieutenants contend that the district court erred by refusing to give the following requested jury instruction relating to how a firefighter's "wait time" should be characterized:

> The time a Fire Suppression Lieutenant spends waiting to respond to calls, engaging in physical training, eating, and sleeping assumes the character of the work they perform once dispatched to an emergency scene.

The lieutenants argue that the requested jury instruction would have assisted the jury in its determination of the "primary duty" of the employees in this case—the second prong of the test required for an employer to establish the executive exemption.

The district court rejected the proposed jury instruction and instead instructed the jury as follows on the "primary duty" prong:

> The Department of Labor regulations define "primary duty" as the principal, main, major, or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.  Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from

19

direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

This instruction tracks 29 C.F.R. § 541.700(a), the DOL regulation that defines "primary duty."

The district court further explained,

The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in the regulations requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

This instruction is a verbatim recitation of 29 C.F.R. § 541.700(b), the DOL regulation providing additional guidance on how to determine what constitutes a "primary duty."

Additionally, because the parties disputed the character of the work performed by the lieutenants once dispatched to an emergency scene,[6] the district

---

[6] The MFD lieutenants contended that their primary duty while on the scene of an emergency was to control the fire, while the City argued that their primary duty was the executive work associated with command and control of the fire scene.

20

court also instructed the jury on the concurrent performance of exempt and nonexempt work:

> Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements for the exemption are otherwise met. While an employee meets the definition of a bona fide executive employee when the employee performs concurrent duties is determined on a case-by-case basis and is based on the factors set forth in the Department of Labor's definition of "primary duty." Generally, exempt executives make the decision about when to perform nonexempt duties. Exempt executives also generally remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinarily—is ordinary production work or routine, recurrent, or repetitive tasks cannot qualify for exemption as an executive.

Like the primary-duty instruction, the concurrent-performance instruction also tracks the applicable DOL regulation—29 C.F.R. § 541.106.

Finally, the district court explained to the jury that the parties disagreed on whether the lieutenants' primary duty was the "prevention, control, or extinguishment of fires and the rescue of fire victims," on the one hand, or management, on the other.[7]

---

[7] The district court also instructed the jury that, in August 2004, the DOL promulgated a regulation commonly referred to as the "first-responder regulation," and the court read the text of the first-responder regulation to the jurors. The district court advised the jury that the first-

## C.

A district court abuses its discretion by refusing to give a requested instruction "only when (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party.'" *Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1224  (11th Cir. 2012) (quoting *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1333-34 (11th Cir. 2011) (per curiam)).  We will not disturb the trial judge's discretion unless "we are left with the substantial and uneradicable doubt as to whether the jury was properly guided during its deliberations." *Broaddus*, 145 F.3d at 1288 (citation omitted).

With regard to the first requirement, the parties agree that the requested jury instruction on wait time pertained to an issue properly before the jury—the determination of the MFD lieutenants' primary duty.  We also agree.  The issue respecting how to characterize wait time was subsumed within the "primary duty" determination, which was a question of fact for the jury to decide.  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S. Ct. 1527, 1530 (1986) ("The question of how the employee spent their working time is a question of fact").

responder regulation is applied in conjunction with the primary-duty test of the executive exemption.  Because the first-responder instruction is not at issue on appeal, we do not detail that instruction further.

22

Turning to the second requirement, the parties disagree on whether the proposed instruction on "wait time" correctly stated the law.  Relying on *Smith v. City of Jackson, Mississippi*, 954 F.2d 296, 299 (5th Cir. 1992), and *Debrecht v. Osceola County*, 243 F. Supp. 2d 1364 (M.D. Fla. 2003), the lieutenants argue that it did.

In *Smith*, district chiefs and battalion chiefs of a fire department sued their city seeking overtime pay.  954 F.2d 296.  The chiefs argued that their primary duty was not exempt under the FLSA's executive exemption because they spent significantly more than 50% of their time engaging in non-exempt activities such as fighting fires and waiting to fight fires.  *Id.* at 299.  In rejecting the plaintiffs' contention, the court noted that, in determining the plaintiffs' primary duty, it was necessary to evaluate the relative importance of the managerial (exempt) duties to the nonexempt duties, the frequency with which the plaintiffs exercised their discretionary power (amount of time spent performing exempt work), the plaintiffs' freedom from direct supervision, and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.  *See id.*  In other words, the court applied the factors for determining primary duty now set forth at 29 C.F.R. § 541.700(a).

Based on its application of these factors to the particular facts adduced in *Smith*, the court concluded that the time that the plaintiffs spent waiting to respond to an emergency dispatch "assume[d] the character of the work the plaintiffs perform[ed] once dispatched to an emergency scene," where they were in charge. *Smith*, 954 F.2d at 299. As a result, the court determined that the *Smith* plaintiffs' primary duty was management, so they were exempt from the FLSA overtime-pay requirements as executives. *Id.*

Invoking *Smith*, the MFD lieutenants urge us to conclude that "time spent waiting" always and necessarily assumes the character of work once fire fighters are sent to the scene of a fire. But that is not what *Smith* holds, and it is not consistent with 29 C.F.R. § 541.700(a)'s mandate that determination of the primary duty "must be based on all the facts in a particular case." The reason that the "time spent waiting" in *Smith* assumed the character of the plaintiffs' activities on the fire scene was that, for the most part, it was, in fact, time spent waiting only. *See Smith*, 954 F.2d at 297 ("The vast majority of [the plaintiffs'] time is spent waiting to respond to firefighting or lifesaving dispatch calls."). So, when considered under the § 541.700(a) factors, it was significantly less important than the on-scene managerial duties and was "necessarily incident" to those managerial duties. *See id.* (quoting *Paul v. Petroleum Equip. Tools Co.*, 708 F.2d 168, 174 (5th Cir. 1983)).

24

But here, evidence was presented at trial showing that when not at a fire scene, the lieutenants participated in and oversaw training for a minimum of two to three hours each day at the firehouse, and they were responsible for deciding the content of at least one of the training sessions each day. The lieutenants also conducted training sessions. With respect to the remaining hours in the workday, other evidence presented showed that the lieutenants determined what the firefighters were to do around the firehouse. While the firefighters completed manual tasks such as cutting the lawn and cleaning the station, the lieutenants prepared paperwork, usually composed of evaluation forms, journal pages, disciplinary documentation, and monthly reports. Although the lieutenants did not engage in manual tasks, they were held responsible if any of these tasks were not completed by the firefighters they supervised. The trial included additional evidence that the lieutenants were responsible for disciplining the firefighters and overseeing the morale and efficiency of those under their command, providing feedback on job performance and offering advice to the firefighters.

So, while it is true that the lieutenants did spend time at the firehouse waiting to be called to firefighting scenes, unlike in *Smith*, that is not solely what they were doing for the bulk of that time. And the district court correctly instructed the jurors to consider the § 541.700(a) factors with regard to all of the lieutenants' activities. To instruct the jury to necessarily characterize time spent

25

"waiting to respond to [fire-fighting] calls" the same way as time spent at the fire-fighting scenes, as the lieutenants requested, would have been error in this case because it would have precluded the jury from considering the actual tasks that the lieutenants did during the periods where they were waiting to respond to calls. That, in turn, would not have allowed the jury to evaluate the § 541.700(a) factors—particularly the relative importance of their managerial duties to their non-exempt duties—with respect to the lieutenants' specific activities during the time that they were waiting to respond to calls.

The jury instructions actually given, however, accurately stated the law, so the district court did not abuse its discretion in declining to instruct the jury as the lieutenants requested. *See Johnson v. Breeden*, 280 F.3d 1308, 1314 (11th Cir. 2002) ("As long as they 'accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed'" in giving jury instructions). The district court thoroughly instructed the jury on "primary duty" and all related legal concepts, using the DOL regulations and guidance.

In particular, the instructions informed the jurors that the determination of whether an individual qualifies as an executive must be made on a case-by-case basis, accounting for the factors set out in the definition of "primary duty." And the district court specifically explained, "[I]f you determine that the plaintiff's primary duty is management, then the executive exemption applies to the plaintiffs.

Conversely, if you determine that the plaintiffs' primary duty is to fight fires—that is, to prevent, control, and extinguish fires, and the rescue of fire victims—the executive exemption does not apply to the plaintiffs."

These instructions sufficiently apprised the jurors of the issues in the case. *See Johnson*, 280 F. 3d at 1314. And we are not left with any doubt—let alone "substantial and uneradicable doubt"—as to whether the jury was properly guided during its deliberations. *See Broaddus*, 145 F.3d at 1288; *See also Goulah v. Ford Motor Co*., 118 F.3d 1478, 1485 (11th Cir. 1997) (district court's refusal to give a proposed jury instruction is not error if the proposed instruction was covered by another instruction, which was given). For these reasons, we affirm the decision of the district court to exclude the proposed jury instruction.

## IV.

Because a reasonable jury could have found that the disciplinary suspensions imposed were permissible since they fell under either a safety rule of major significance or a workplace conduct rule, we conclude that the district court did not err when it denied judgment as a matter of law as requested by the MFD lieutenants. We also find that the district court did not abuse its discretion when it declined to provide the MFD lieutenants' proposed jury instruction on wait time because it was not an accurate statement of the law for purposes of this case. For these reasons, we **AFFIRM**.