[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14790

_____

D.C. Docket No. 1:11-cv-20853-KMW


RICHARD I. FRIED,

                                                                Plaintiff-Appellant,

                                    versus

STIEFEL LABORATORIES, INC., ET AL,

                                                                Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 1, 2016)

Before WILLIAM PRYOR and DUBINA, Circuit Judges, and ROBRENO,[*]
District Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

This appeal requires us to decide whether a proposed jury instruction was a correct statement of federal securities law. Richard Fried was an employee of Stiefel Laboratories, a formerly family-owned pharmaceutical company, and he accrued stock in the company as part of his pension plan. He sold his stock back to Stiefel Labs in January 2009, a few months before the company was acquired by a larger pharmaceutical company, and the value of its stock rose substantially. Fried sued Stiefel Labs and its president, Charles Stiefel, on several grounds, including a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. The parties' proposed jury instructions stated that, to prevail on a claim under Rule 10b-5(b), Fried must prove that Stiefel and Stiefel Labs omitted a material fact necessary to keep other statements from being materially misleading. Fried requested that the instruction require Fried to prove only that the defendants failed to disclose material information. Fried argues that the district court erred by refusing to include this jury instruction. Because Rule 10b-5(b) does not prohibit a mere failure to disclose material information, Fried's proposed jury instruction misstated the law. We affirm.

## I. BACKGROUND

Stiefel Laboratories Inc. was a privately held pharmaceutical company until it was acquired by an affiliate of GlaxoSmithKline LLC in July 2009. Charles

Stiefel served as Stiefel Labs' chief executive officer and chairman of the board of directors.

Stiefel Labs had a tax-qualified, defined-contribution pension plan called the Employee Stock Bonus Plan. Under the Plan, Stiefel Labs annually contributed shares of common stock, cash, or both to the participants' accounts. The participants had the right to take a distribution of their common stock upon death, disability, termination of employment, and certain other events. Once a participant received a distribution of his stock, he had a "put" right, which when exercised required Stiefel Labs to purchase the stock from the participant at a price set forth in the most recent appraisal adopted by the trustee of the Plan.

Richard Fried was the chief financial officer of Stiefel Labs from 1987 through 1997. At the time of his resignation, Fried had 30.7881 shares of common stock in his Plan account and 10 shares of stock outside of the Plan. After Fried left, Stiefel Labs sent him annual account statements showing the number of shares held in his Plan account and the price per share set by the Plan's trustee. Fried periodically met with Stiefel, who he considered a friend, to learn how the company was performing.

In August 2007, Fried learned from an article in the *Miami Herald* that Stiefel Labs had announced that it had accepted a $500 million private equity investment from the Blackstone Group. According to the article, "The

3

announcement stressed that the company will remain a family-controlled business." The article stated that private equity firms often plan an "exit strategy through a public offering of stock—something that Stiefel has said in the past the company has no interest in."

In September 2007, Fried met with Stiefel and asked him how the Blackstone investment would impact the value of his shares. Stiefel told Fried that Blackstone paid approximately $60,000 per share but that the investment would not affect the value of his common stock. After the meeting, Fried sold his 10 shares of non-Plan stock but did not sell the stock in his Plan account. In October 2008, Fried met with Stiefel again. Stiefel told him that the company had a promising outlook because several new products would be released in approximately five years but the next few years might be challenging due to competition from generic products. Fried testified that he understood this conversation as "kind of a sell signal."

In November 2008, Stiefel learned that Sanofi-Aventis, a French pharmaceutical company, was interested in acquiring Stiefel Labs. Selling the family-owned company was "taboo in the past," but Stiefel presented the idea to his family on Thanksgiving. Two executives of Blackstone, Anjan Mukherjee and Chinh Chu, advised the family that, if they wished to sell, they should do so either immediately or in five years. Stiefel had a short, introductory meeting with the

4

chief executive officer of Sanofi-Aventis on December 22. They agreed to sign a confidentiality agreement.

Unaware of these negotiations, Fried put the common stock from his Plan account to Stiefel Labs on January 6, 2009, and received a price of $16,469 per share. Over the next few months, Blackstone assisted the company in soliciting other bids and working with potential acquirers. On April 20, 2009, GlaxoSmithKline agreed to buy Stiefel Labs for approximately $3.6 billion. After the sale, shareholders received $69,705 per share.

Fried sued Stiefel Labs, Stiefel, and several other officers of Stiefel Labs. After the district court dismissed the complaint in part, Fried filed an amended complaint. The amended complaint asserted claims under the Employee Retirement Income Security Act, federal securities laws, and state law. The court bifurcated the trial of the claims under the Employee Retirement Income Security Act from the other claims. The parties later filed a joint stipulation for dismissal of Fried's claims under the Employee Retirement Income Security Act, and the court dismissed those claims. On October 31, the district court granted judgment as a matter of law for the defendants on many of Fried's claims. The only remaining claim—a claim against Stiefel Labs and Stiefel for fraud under federal securities law based on the 2009 sale of Fried's 30.7811 shares of common stock—went to the jury.

The parties submitted proposed jury instructions for the "claims under Rule 10b-5(b)." The parties agreed on language that explained that the defendants had a duty under Rule 10b-5(b) to disclose facts necessary to make other statements not misleading. Fried requested an additional sentence in the instruction that the defendants had a "duty to disclose all material information." He stated that this duty arose from a "relationship of trust and confidence" between Fried and the defendants. Stiefel and Stiefel Labs objected. The following is the agreed-upon instruction with Fried's proposed sentence underlined:

> An "omission" is a failure to disclose a material fact. The Defendants had a duty to disclose all material information to Mr. Fried. Additionally, the Defendants had a continuing duty to disclose facts that would be necessary to know in order to keep other statements from being materially misleading. That is to say that, if the Defendant has made statements regarding material facts in the past, such as in information sent out to shareholders or statements made in press releases issued by the company, there is a duty to correct statements of material fact if it is learned that the statement, though correct at the time it was made, would be misleading if left unrevised. Likewise, a Defendant has a duty to update prior statements when, though the statement was reasonable when made, subsequent events have rendered the statement materially misleading.

This instruction incorporated parts of the pattern instruction for this Circuit for claims under Rule 10b-5(b). *See* 11th Cir. Pattern Civ. Jury Instr. 6.2 (2013). At the charge conference, Fried's counsel explained, "There are two duties that we're talking about. One is the duty to update or correct." He continued, "The additional duty that we want is an additional duty when the corporation is purchasing shares

6

from the plaintiff shareholder." The district court refused to include the sentence

Fried requested. The jury returned a verdict in favor of Stiefel Labs and Stiefel.

## II. STANDARD OF REVIEW

"We review the district court's refusal to give a proposed jury instruction for

an abuse of discretion." *Watkins v. City of Montgomery*, 775 F.3d 1280, 1289 (11th

Cir. 2014). A district court abuses its discretion if "(1) the requested instruction

correctly stated the law, (2) the instruction dealt with an issue properly before the

jury, and (3) the failure to give the instruction resulted in prejudicial harm to the

requesting party." *Id.* at 1291 (quoting *Pensacola Motor Sales, Inc. v. E. Shore

Toyota, LLC*, 684 F.3d 1211, 1224 (11th Cir. 2012)).

## III. DISCUSSION

Fried argues that his proposed jury instruction correctly stated that Stiefel

Labs had a duty as a corporate insider to disclose all material information. An

insider of a corporation has a duty to disclose all material nonpublic information or

to abstain from trading in the corporation's stock. *Chiarella v. United States*, 445

U.S. 222, 227 (1980). Some courts have stated or assumed that privately held

corporations are insiders under Rule 10b-5 and have a duty to disclose before

trading in their own stock. *See, e.g.*, *Castellano v. Young & Rubicam, Inc.*, 257

F.3d 171, 179 (2d Cir. 2001); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1204

(1st Cir. 1996), *superseded in other part by* 15 U.S.C. § 78u-4; *McCormick v.*

*Fund Am. Cos.*, 26 F.3d 869, 876 (9th Cir. 1994); *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 434 (7th Cir. 1987); *Levinson v. Basic Inc.*, 786 F.2d 741, 746 (6th Cir. 1986), *vacated on other grounds*, 485 U.S. 224 (1988). We need not decide whether a corporation is an insider because, even if Stiefel Labs was an insider, Fried's proposed jury instruction did not correctly state the law.

Rule 10b-5(b) prohibits misrepresentations and omissions of material fact; it does not prohibit an insider's failure to disclose all material information before trading in its stock. Insider trading is actionable under Rule 10b-5(a) and (c). This difference explains why the Eleventh Circuit pattern instructions include one instruction for misrepresentations and omissions under subsection (b) and another instruction for insider trading under subsection (a). *Compare* 11th Cir. Pattern Civ. Jury Instr. 6.2 *with* 11th Cir. Pattern Civ. Jury Instr. 6.3.1.

The sentence Fried proposed neither accurately described a claim under Rule 10b-5(b) nor adequately described insider trading. The parties proposed instructions based on the pattern instruction for claims under Rule 10b-5(b), but Fried never requested the pattern or any similar instruction for a claim of insider trading. Fried instead requested that a sentence be added to the modified version of the pattern instruction for claims under Rule 10b-5(b) to encompass an insider's duty to disclose. Because Fried's proposed instruction was not a correct statement of the law, the district court did not abuse its discretion by refusing to give it.

8

Section 10(b) of the Securities Exchange Act of 1934 prohibits the use of any "manipulative or deceptive device or contrivance" in "connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). And Rule 10b-5, promulgated by the Securities and Exchange Commission to implement section 10(b), makes the following acts or omissions unlawful when done with a specified connection to interstate commerce:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or *to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading*, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (emphasis added). To prove a violation of Rule 10b-5(b), a plaintiff must identify a misrepresentation or an omission of a material fact. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

The instructions given by the district court correctly stated the law of Rule 10b-5(b). An individual has a duty "to update prior statements if the statements were true when made, but misleading or deceptive if left unrevised," and a failure to update is an "omission" under subsection (b). *Finnerty*, 756 F.3d 1310, 1316–17 (11th Cir. 2014); *accord FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282,

1305 (11th Cir. 2011). In their proposed instructions, the parties added sentences to the pattern instructions for a claim under Rule 10b-5(b) to explain that Stiefel and Stiefel Labs had "a duty to correct statements of material fact if it is learned that the statement, though correct at the time it was made, would be misleading if left unrevised." Fried agrees that the instruction as given correctly described this duty to update.

Fried argues that an insider's failure to disclose material facts when trading in the corporation's stock is also an "omission" under Rule 10b-5(b), but this interpretation is contrary to the plain text of the Rule. Rule 10b-5(b) describes an omission that makes other "statements made" misleading. 17 C.F.R. § 240.10b-5. That is, it proscribes fraud only in connection with an affirmative representation. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972). If the district court had added Fried's proposed sentence and instructed the jury that the "Defendants had a duty to disclose all material information" and "[a]n 'omission' is a failure to disclose a material fact," Stiefel and Stiefel Labs could have been erroneously held liable under Rule 10b-5(b) even if they had never made any statements to Fried. Our pattern instruction, in contrast, correctly defines an "omission" as "the failure to state facts that would be necessary to make the statements made by [name of defendant] not misleading to [name of plaintiff/the SEC]." 11th Cir. Pattern Civ. Jury Instr. 6.2.

10

Fried argues that the "omission" component of Rule 10b-5(b) extends beyond the requirement to prevent earlier statements from becoming misleading and prohibits omissions by individuals who owe another a duty to disclose, but Rule 10b-5(b) does not proscribe total silence. This Court has explained that a duty to disclose exists where it is necessary to make prior speech not misleading or "where the law imposes special obligations, as for accountants, brokers, or other experts, depending on the circumstances of the case." *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986) (quoting *Woodward v. Metro Bank*, 522 F.2d 84, 98 n. 28 (5th Cir. 1975)). An individual with a duty to disclose may violate Rule 10b-5(b) by omitting a material fact from a statement, *see First Va. Bankshares v. Benson*, 559 F.2d 1307, 1314 (5th Cir. 1977), and an individual with a duty to disclose may commit a fraud under Rule 10b-5 by failing to disclose material information, *cf. Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1206–07 (11th Cir. 2001). But this Court has never held that a failure to disclose material information is an omission under *subsection (b)* absent a statement made misleading by that failure.

An insider who makes no affirmative representation but trades on nonpublic information may violate Rule 10b-5(a) or (c), not Rule 10b-5(b). Rule 10b-5(a) and (c) "are not so restricted" as Rule 10b-5(b) because they do not require making statements. *Affiliated Ute Citizens*, 406 U.S. at 152–53. In *Chiarella v. United*

11

*States*, the Supreme Court considered whether the silence of an employee of a financial printer who traded in stock on the basis of nonpublic information constituted a violation of section 10(b) of the Exchange Act. 445 U.S. at 226. The Supreme Court included only the language from subsections (a) and (c) as the "pertinent part" of Rule 10b-5. *Id.* at 225. Similarly, when the Supreme Court upheld liability for insider trading based on a theory of misappropriation in *United States v. O'Hagan*, it included only the language from subsections (a) and (c) as the "relevant" portion of Rule 10b-5. 521 U.S. 642, 651 (1997). Two of our sister circuits have stated that an insider's silence is a violation of Rule 10b-5(b), *see Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009); *Garcia v. Cordova*, 930 F.2d 826, 828–29 (10th Cir. 1991), but both statements were made in passing and neither grapples with the text of subsection (b).

Even if Fried's proposed jury instruction had referred to Rule 10b-5(a) or (c) instead of Rule 10b-5(b), his proposed instruction did not adequately state the elements of a claim of insider trading. The pattern instruction for insider trading, for example, requires proof that the defendants used a "'device, scheme, or artifice' . . . known as 'insider trading.'" 11th Cir. Pattern Civ. Jury Instr. 6.3.1. It explains that a jury should be instructed about the "specific insider-trading theory alleged in the particular case"—classical insider theory, misappropriation theory, tipper theory, or tippee theory. *Id.* The instruction that Fried requested, in contrast,

12

neither explained that the corporation had a duty to disclose by virtue of its role as an insider nor explained how insider trading occurs. Indeed, Fried's proposed instruction did not even mention the term "insider." As a result, the instructions proposed by Fried did not require the jury to find that Stiefel Labs traded "on the basis of" material information. *SEC v. Adler*, 137 F.3d 1325, 1338 (11th Cir. 1998). This Circuit has stated that the mere possession of material nonpublic information is not sufficient to establish liability for insider trading; an insider must use that information, although a strong inference of use arises when an insider trades while in possession of material nonpublic information. *Id.* at 1337. By attempting to modify an instruction for traditional securities fraud to cover both that kind of claim and a claim of insider trading, Fried described neither claim correctly in his proposed instruction.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of Stiefel and Stiefel Labs.